UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| 2013 TRAVIS OAK CREEK, GP, LLC, § | | |
| 2013 TRAVIS OAK CREEK, LP § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | Civil Action No. 1:17-cv-00560-RP | |
| § | | |
| PNC BANK, NATIONAL ASSOCIATION § | | |
| AND COLUMBIA HOUSING SLP § | | |
| CORPORATION, § | | |
| § | | |
| Defendants. § | | |

**PLAINTIFFS' CONSOLIDATED VERIFIED EMERGENCY MOTIONS FOR APPOINTMENTOF A RECEIVER, AND/OR FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, WITH MEMORANDUM BRIEF**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Federal Rules of Civil Procedure 66 and 65(a), 2013 Travis Oak Creek GP, LLC and 2013 Travis Oak Creek, LP ("Plaintiffs") file Verified Consolidated Emergency Motions for Appointment of a Receiver[1], and/or for a Temporary Restraining Order and Preliminary Injunction with Brief included, and respectfully show as follows:

**INTRODUCTION**

Equity abhors a forfeiture. *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 429 (Tex. 2008); *see also McLaurin v. Shell Western E.&P., Inc.* 778 F.2d 235, 237 (5th Cir. 1985) (noting the law disfavors forfeiture); *Blue Gordon C.V. v. Quicksilver Jet Sales, Inc.*, 444 Fed. Appx. 1, 5 (5th Cir. 2011). Texas courts should protect Texas citizens from putative forfeitures and irreparable injury, particularly when the cited or claimed basis for an alleged forfeiture is

---

[1] Plaintiffs were informed by the Clerk that the Court requests a motion following the filing of their Original Petition and Verified Application for a Temporary Restraining Order, Temporary and Permanent Injunction and Appointment of a Receiver.

**PLAINTIFFS' CONSOLIDATED VERIFIED EMERGENCY MOTIONS FOR APPOINTMENT OF A RECEIVER, AND/OR FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION    Page 1**

false, and the party claiming such a forfeiture has acted with extreme unclean hands, created the conditions it claims allows for the putative forfeiture, and otherwise is acting to harm the entity at issue — a Texas limited partnership, located in Austin, Texas.

This case arises from the predatory, inequitable and wrongful business practices of a behemoth financial services institution from Pennsylvania who believes it can (unless restrained by a court) act like a typical, proverbial 900 pound gorilla in a business transaction. In this case, Defendants literally are trying to steal one of the Plaintiffs (and related parties') interest in a partnership that owns and operates a valuable, award-winning, affordable housing complex that such Plaintiff developed in Austin. Having failed to satisfy its insatiable appetite for fee income that stunningly, it expressly admits it is not entitled to, Defendant PNC Bank (joined by its affiliate Defendant Columbia Housing), has wrongfully claimed: 1) a right to oust the Plaintiff general partner from the partnership that is the subject of this case and/or remove and replace that Plaintiff as the general partner; and, 2) that such a right can be and has been self-activated, due to alleged defaults by the Plaintiff general partner that Plaintiffs allege, and can prove: 1) do not exist; 2) have not been adjudicated in any event; and, 3) are alleged to exist (if at all) because Defendants' actions and omissions (all of which constitute prior material events of default) created the conditions Defendants complain of, to justify their self-help actions.

The Court should grant emergency injunctive relief to restore the last peaceable status quo in this case which is "an action between partners or others jointly owning or interested in any property or funds," if only to allow the Court an opportunity to consider and complete the process of appointing a temporary receiver over the subject partnership, to protect the interests of all of its partners and the partnership itself, while the partners litigate their disputes and disagreements. Or, the Court can proceed immediately, instead, to appoint such a receiver. *See,*

**PLAINTIFFS' CONSOLIDATED VERIFIED EMERGENCY MOTIONS FOR APPOINTMENT OF A RECEIVER, AND/OR FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION   Page 2**

*e.g., Franchise Loan Trust 1998-I v. S. & A. Fee Properties SPE 2, LLC,* 2008 WL 4093620 (E.D. Tex. 2008); *Netsphere, Inc. v. Baron,* 703 F.3d 296 (5th Cir. 2012); Rule 66, F. R. Civ. P.

## RELEVANT FACTS[2]

1.  On or about May 23, 2014, Defendants PNC and Columbia Housing, as Limited Partners, and Plaintiff 2013 Travis Oak Creek GP, LLC, as the General Partner, entered into a certain Amended and Restated Agreement of Limited Partnership of 2013 Travis Oak Creek, LP (the "Partnership Agreement"). The Partnership Agreement is the governing document of 2013 Travis Oak Creek, LP (the "Partnership"). A copy of the Partnership Agreement (without exhibits) is attached as Exhibit "A".

2.  The purpose of the Partnership is to acquire, construct, own, develop, operate, maintain, manage, lease, and ultimately sell the "Lucero Apartments" — a complex (the "Property") located just north of Oltorf Road in Austin, Travis County, Texas. The Partnership Agreement vests in the general partner, responsibility for management of the Partnership's business, including but not limited to a right to borrow money, pledge security, purchase insurance, and prosecute or defend litigation on behalf of the Partnership. *See* § 6.1. Some of the general partner's powers are subject to consent by the Limited Partners. *See* § 6.2. "No Limited Partner shall take part in, or interfere in any manner with the management, control, conduct or operation of the Partnership, or have any right, power or authority to act for or bind the Partnership." *See* § 7.2.

3.  PNC Bank is not just a limited partner in the Partnership. It also agreed to serve as a permanent lender to the Partnership, and committed to providing a loan upon completion of construction that would, among other things, pay off the Partnership's construction loan with JP

---

[2] The Court is referred to Plaintiffs' Response to Defendants' Notice of Filing of First-Filed Action and Pendency of Application for Injunctive Relief, filed by Plaintiffs in this action as Doc. 8, for a pertinent procedural history.

Morgan Chase Bank. PNC Bank and Columbia were required to fund additional sums of equity when the PNC loan closed and/or when and as construction was completed.

4. Shortly after residents were permitted to occupy their homes at the Property, and after the buildings were fully occupied, Plaintiff GP discovered several, severe defects in the construction of the buildings on the Property— defects that are the subject of pending litigation in Travis County (in the 250th District Court), that Plaintiff GP caused the Partnership to litigate with the express consent of Defendants. Discovery of these defects coupled with the general contractor's refusal to remedy the same, caused and required the Partnership to invoke its contractual right to extend the closing date of the loan PNC Bank had committed to providing, and a May 2017 closing date was agreed upon by the Partnership and PNC Bank, to coincide with the maturity date of the Chase construction loan. The Partnership paid all required extension fees to PNC Bank and Fannie Mae, and Plaintiff GP continued to work diligently to understand and resolve the construction defect issues, so as to be able to close the PNC Bank loan on or before the extended closing date, in May of 2017.

5. The extension of the closing date of the PNC Bank loan to May of 2017 apparently upset PNC Bank because it delayed PNC Bank's receipt of extensive fees it would be entitled to receive upon closing— fees PNC Bank clearly hoped to collect before the end of 2016. Ignoring the fact that it was also a partner in the Partnership and acting in conflict with its partnership duties, obligations and rights, PNC Bank demanded that the Partnership pay it exorbitant fees, on a monthly basis, before the closing of its loan in May, falsely representing to Plaintiffs that although not provided for in the documents and agreements governing the PNC Bank loan, a third party, alleged investor who was scheduled to buy the loan from PNC after it closed, was requiring such fees as a condition of extending its agreement to purchase the closed

loan from PNC. As it turned out, there was no such third party, or demand by or on behalf of one.

6. When Plaintiff GP, acting for the Partnership, refused to pay the demanded fees, PNC Bank terminated its loan commitment, forcing the Partnership into a position of having to find alternative financing, in order to pay off the Partnership's construction loan by its maturity date in May of 2017. Plaintiff GP diligently located a lender to provide a loan to the Partnership on favorable terms. Defendants' cooperation was required to close that loan and Defendants expressly consented to Plaintiff GP's obtaining and closing the loan, although they subsequently have engaged in a course of conduct that was and is intended and calculated to ensure the loan cannot close, as is detailed below. Defendants also have failed and refused to fund additional sums of equity required of them under the Partnership Agreement, in part because of the Partnership's refusal to pay PNC Bank another fee it has demanded— commonly referred to as a "breakage fee"— totaling in excess of $7 million, which PNC Bank incorrectly alleges it is entitled to be paid because its proposed loan never closed. Amazingly, speaking for PNC Bank as a partner in the Partnership, David Hasselwander, an officer of PNC Bank, wrote an email to Plaintiff GP demanding that Plaintiff GP cause a recent Partnership audit report to be amended to state the following (see Exhibit "B"):

> "[t]he Partnership views any potential claim [by PNC Bank] to be fully defensible, with exposure not to exceed $1 million."

7. As Plaintiff GP has been nearing its ability to close the new loan that Defendants had consented to closing[3] — and that will pay off the Chase construction loan (which is now in the status of a post maturity default) forthwith, Defendant PNC Bank has not only refused to cooperate with Plaintiff GP's efforts to close that loan, it has interfered with such efforts, and

---
[3] *See,* consent letter, Exhibit "C."

now will not cooperate until and unless Plaintiff GP causes PNC Bank to be paid the $7 million plus, that PNC Bank demands on the one hand, as a "breakage fee", while admitting, on the other hand, the sum is not owed.  *See,* Exhibit "B."  **The lender remains ready, willing and able to close its offered loan, with some limited cooperation from Defendants, and is expected to immediately confirm its outstanding closing requirements in writing, so the parties and the Court are fully aware of the same.**

8. Plaintiff GP actively is continuing to try to satisfy all outstanding closing requirements of the new lender.  Plaintiff GP already has secured a bond on behalf of the Partnership, to cover the general contractor's lien against the Property.  Plaintiff GP and its principals are ready, willing and able to buy that bond, if the loan will close, and personally indemnify the bonding company, which they are not required to do under the Partnership Agreement, in order to facilitate the loan closing so that the Chase construction loan will be paid without litigation, foreclosure exposure or other harm to the Partnership.  Plaintiff GP also has made arrangements to fund any negative equity that may be required to close the loan – while fully reserving its right to pursue from Defendants the equity funding that is due and owing from them, and that they continue, wrongfully, to refuse to fund.

9. The most recent actions of Defendants giving rise to this lawsuit have caused Plaintiff GP to be unable to proceed to close the new loan, as there is now a question and justiciable controversy concerning who the Partnership's general partner is, and/or who is authorized to act as such, or otherwise, on behalf of the Partnership.

10. More specifically, on June 8, 2017, Plaintiff GP received correspondence from Defendants:

    a. Demanding that it repurchase Defendants' respective interests in the Partnership on or before July 7, 2017;

b. Notifying Plaintiff GP that Defendant Columbia Housing was removing Plaintiff as the general partner of the Partnership, and claiming that such removal constitutes an Event of Withdrawal by Plaintiff GP from the Partnership;

c. Claiming that Plaintiff GP had relinquished and sold to one or both Defendants all of its interests in the Partnership and all unpaid fees, advances, distributions and profit, whether earned or unearned; and

d. Claiming that Defendant Columbia Housing is now the general partner in exchange for payment of $100.00, which Plaintiff GP has refused to accept, and has returned to Defendants. *See,* Exhibit "D."

11. Defendant Columbia also sent notice, dated June 8, 2017, to at least Chase Bank, Austin Housing Finance Corporation, Southwest Housing Compliance Corporation and Texas Department of Housing and Community Affairs claiming and representing to be the general partner and sole party authorized to act on behalf of the Partnership. Plaintiffs are responding to those entities, objecting to Defendant's actions and advising that legal action is pending on the question.

12. Defendants also dispatched a management company to the Property on June 8th who demanded that the current management company immediately relinquish management and control to that company, even though Defendants' putative notice of removal of the management company requires a 30-day termination notice, assuming further that either of the Defendants are authorized to act for the Partnership to effectuate such a termination. This visit was a classic breach of the peace, and of the Partnership's obligations to, among others, HUD, who Defendants conspicuously neglected to give notice to, of their claimed general partner status.

13. Defendants also purportedly acted to terminate various counsel for the Partnership, claiming authority as a general partner to do so.

14. While Defendants have acted in the foregoing manner, they also have acknowledged and admitted in their Northern District of Texas suit that there is a justiciable

controversy, dispute, disagreement, uncertainty and insecurity about whether grounds existed for their punitive removal of Plaintiff GP as the Partnership's general partner and whether they could cause such a removal on a self-help basis. Indeed they seek a declaratory judgment regarding such issues in their suit filed on June 8, 2017, and amended on June 9, 2017.

15. Notably, to the extent the Partnership Agreement has an enforceable provision that authorizes a limited partner to remove a general partner,[4] an actual event of default by the general partner must have actually occurred. There is none. Moreover, or in the alternative, the Defendant Limited Partner purporting to remove Plaintiff GP committed its own defaults before any event that Defendants have alleged as a default by Plaintiff GP, occurred. And, any event described or alleged by Defendants to be a default by Plaintiff GP was caused by the actions and omissions and defaults of the Defendants, and/or their wrongful interference with the general partner's (*i.e.,* Plaintiff GP) right to operate the Partnership free from such limited partner interference. *See* Partnership Agreement § 7.2.

16. Defendants have created irreconcilable conflicts with regard to who presumably is the authorized general partner of the Partnership, and who is authorized to act for the Partnership, including management and operating of the affairs and the property of the Partnership.

17. Meanwhile, the Partnership is on the verge of losing its new financing, potentially losing its real property and other valuable contractual assets, including but not limited to its HUD subsidy contract.

---

[4] Plaintiffs allege there is no such legally enforceable provision.

# APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND EMERGENCY APPOINTMENT OF A RECEIVER

## A. Appointment of Receiver

18. A court may appoint a receiver in an action between partners or others jointly owning or interested in any property or fund, and such appointment request is governed by the rules of equity. *See,* Section 64.001(a)(3) and (6), Tex. Civ. Prac. & Rem. Code and Sections 11.402(a) and 11.403(a)(3), Tex. Bus. Org. Code. A district court in the county in which the registered office or principal place of business of a domestic entity is located has jurisdiction to appoint a receiver for the property and business of the entity. *E.g.,* Section 11.402, Tex. Bus. Org. Code. The Partnership's principal office and the sole real property that it owns, are in Austin, Texas.

19. The appointment of a receiver is a matter within the discretion of a court, and may be sought by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer. *E.g., Franchise Loan & Trust,* infra *1, citing Santibanez v. Wier McMahon & Co.,* 105 F.3d 234, 241 (5th Cir. 1997) (internal citations omitted).

20. In this case, the parties essentially agree[5] that interim, emergency relief on an extraordinary basis is required to protect the Partnership while their disputes and disagreements are litigated and adjudicated, including their disputes and disagreements about:

   a. whether Plaintiff GP has been removed as general partner, properly or automatically, or whether it can be so removed, on a self-help basis or otherwise, by either of the Defendants;

   b. who should be allowed to function or act as the general partner, or otherwise act for the Partnership during that period of time;

---

[5] *See, e.g.,* Defendants' Motion for Temporary Restraining Order and Preliminary Injunction, in the Northern District of Texas.

      c.      who has defaulted or caused a default under the Partnership Agreement, and when; and,

      d.      what legal excuses exist and bar the parties' respective default claims or allegations or any remedies they seek or may seek, inclusive of any claimed self-help remedies.

21.     The parties agree the Partnership cannot have two masters, and the fact that both sides claim conflicting right and authority to act for the Partnership, creates an impossible disruption in the Partnership's management and operations, and ability to perform both.

22.     The parties agree that their conflicting positions regarding such right and authority is injuring the Partnership, and that continued disruption of its operations will occur until their claims are resolved, which may include substantial loss by the Partnership.

23.     The parties do not agree about what constitutes the *last* peaceable status quo, and they disagree about whether the Partnership Agreement provision upon which Defendants have acted, is legally or factually enforceable, or merely illusory and ambiguous, and beyond enforceability. Defendants believe they are entitled to injunctive relief that presumes enforceability of Section 7.7 of the Partnership Agreement and the alleged underlying defaults by Plaintiff GP they incorrectly assert and rely upon in claiming that their putative automatic removal of Plaintiff GP as general partner is the last peaceable status quo under the Partnership Agreement. Plaintiffs, in contrast, allege the last peaceable status quo is the status that pre-dates the disputed, conflicted purported removal of Plaintiff GP as general partner, its putative ouster from the Partnership by Defendants, and the putative forfeiture by Plaintiff GP of its interests and rights in the Partnership, including its rights to the economic benefits of such ownership, and a recovery of millions of dollars of value Plaintiff GP has caused to be contributed.

24. The rules of equity govern all matters relating to the appointment, powers, duties and liabilities of a receiver and to the powers of a court regarding a receiver. Section 64.004, Tex. Civ. Prac. & Rem. Code. Under the prevailing circumstances, equity demands the appointment of a receiver on an immediate, emergent basis. The appointment of a receiver will protect the Partnership and its property, and the respective rights and interests of the partners, and will harm no partner.

25. Given the uncertainty and disputes regarding which of the Partnership's partners presently is authorized to act as the general partner, and/or to manage the affairs and operations of the Partnership -- which the parties agree cannot be managed or performed in the face of such uncertainty and disputes -- the Partnership is at imminent risk of losing its available financing and in turn, its property.

26. A receiver should be appointed to:

    a.) Complete the closing of the pending interim financing;

    b.) Resolve the Chase Bank post maturity default; and,

    c.) Manage and operate the affairs and business of the Partnership until such time as a court adjudicates the question of who is the authorized and acting general partner.

Such an appointment will allow the Court to efficiently achieve the orderly disposition of the parties' claims. *Woodson v. Surgitek, Inc.,* 57 F.3d 1406, 1417 (5th Cir. 1995). It will also conserve the Partnership's integrity and property, prevent an automatic forfeiture and related damage to Plaintiff GP (*e.g.,* Section 11.403(a)(3) and (b)(2)), where it has been shown that Partnership property is at risk or danger of being lost, removed or injured.

## B. Application for Temporary Restraining Order and Preliminary Injunction

27. Imminent and irreparable injury or harm will occur to Plaintiffs if a temporary restraining order and a temporary injunction are not entered by the Court to protect Plaintiff GP and the Partnership. More specifically, Plaintiff GP is being precluded from performing its obligations as general partner to protect the Partnership and its property and prevent the loss thereof, and the Partnership and Plaintiff GP will suffer irreparable harm if the Court does not enter a temporary restraining order to maintain the last peaceable status quo, if only to preserve its jurisdiction over the above-stated receivership application, before further irreparable harm or loss occurs.

28. The threatened irreparable harm is:

    a) Plaintiff GP will suffer a forfeiture of its interest and benefits thereof, in the Partnership and its property;

    b) Plaintiff GP will lose its ability to continue managing and protecting the Partnership and its property, free from interference by the Defendants — Limited Partners — including losing the authority and ability to close a loan, imminently, that Defendants expressly consented to, and that the Partnership needs to avoid the loss of its property, at the hands of Chase Bank;

    c) Loss of an interest in this unique real property is irreparable injury as a matter of law and fact;

    d) The Partnership will not know who is authorized to prosecute and/or defend litigation and claims that it owns or faces with or against third parties; and,

    e) Third parties will not know who they are authorized to deal with, as the duly authorized general partner or party authorized to act for the Partnership in third party transactions.

29. No adequate remedy at law is available to prevent the occurrence of these threatened injuries and/or to remedy such injuries.

30. Plaintiffs seek a temporary restraining order followed by a preliminary injunction, enjoining the Defendants, and their agents, servants, trustees, employees and all persons acting in concert with them from engaging in any act which is calculated to interfere with Plaintiff GP's rights under the Partnership Agreement with respect to the operation and management of the Partnership and its property, or its authority to act as general partner, pursuant to the terms of the Partnership Agreement, including closing the pending financing already consented to by Defendants and settling the Chase loan debt. Defendants and those acting in concert with them should also be enjoined and restrained from holding themselves out to be the Partnership's general partner or acting as the Partnership's general partner until and unless a court has declared one of them to be the general partner, or otherwise authorized them to act as such.

31. Plaintiffs are substantially likely to prevail on the merits of their claim for appointment of a receiver, given the equitable grounds that demand such an appointment. Injury is imminent and irreparable, for which no adequate remedy at law is available in the absence of the requested injunctive relief, at least until the Court can exercise its jurisdiction over the receivership application.

32. The balancing of the equities and hardships favors issuance of the requested injunctive relief, and the injury faced by Plaintiffs outweighs the injuries, if any, that would be sustained by the Defendants as a result of the injunctive relief.

33. In addition, the public interest would be served by the entry of the requested injunctive relief. No party can be, or will be harmed if the injunctive relief is granted, at least temporarily.

34. Plaintiffs are willing and able to post a bond in an amount the Court deems appropriate.

## **PRAYER**

For the foregoing reasons, Plaintiffs' Verified Emergency Motion for Appointment of a Receiver, and/or for a Temporary Restraining Order and Preliminary Injunction should be granted, in addition to all other relief in law and in equity to which Plaintiffs may be entitled.

Respectfully submitted,

*/s/ Kenneth B. Chaiken*
Kenneth B. Chaiken
State Bar No. 04057800
kchaiken@chaikenlaw.com

**CHAIKEN & CHAIKEN, P.C.**
Legacy Town Center III
5801 Tennyson Parkway
Plano, Texas 75024
(214) 265-0250 telephone
(214) 265-1537 facsimile

William S. Rhea
State Bar No. 16807100
brhea@dbc.com
**DuBOIS, BRYANT & CAMPBELL, LLP**
303 Colorado Street, Suite 2300
Austin, TX 78701
(512) 457-8000
(512) 457-8008 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record via the Court's electronic filing system on this 12th day of June, 2017.

*/s/ Kenneth B. Chaiken*
Kenneth B. Chaiken

# VERIFICATION

STATE OF TEXAS §
§
COUNTY OF TRAVIS §

    BEFORE ME, the undersigned authority, on this day personally appeared Rene O. Campos being by me duly sworn on their oath, did aver that he is the managing member of Plaintiff 2013 Travis Oak Creek GP, LLC and has read the facts set forth above in paragraphs 1-17, 21, 27 and 29 and they are within his knowledge and are true and correct. He further avers that that he would aver to those facts as if republished in a full form declaration, subject to the penalties of perjury.

_____
RENE O. CAMPOS

    Subscribed and sworn to before me this the 12th day of June 2017, to certify which witness my hand and seal of office.

_____
Notary Public in and for the State of Texas

> OKSANA ZAVYRUKHA
> Notary Public, State of Texas
> Comm. Expires 09-19-2020
> Notary ID 130827319